# Cannonball Transit Company v. Sparks Bros. Bus Company et al.

(Decided June 19, 1934.)

STRATTON & STEPHENSON, O. T. HINTON, and L. W. MORRIS for appellant.

J. C. JONES for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Cannonball Transit Company, a corporation, during the time hereinafter reviewed, was the owner of permit No. 5074 authorizing it to operate a bus line between Pikeville and Prestonsburg, Ky.; permit No. 5078 authorizing it to engage in like business between Paintsville and Ashland via Louisa, Ky.; permit No. 5059, Ashland to Paintsville via Louisa and also the owner of one-half interest in permit No. 5025 issued to

the Paintsville Bus Company conferring on it the privilege to operate a bus line between Paintsville and Prestonsburg, Ky. Sparks Bros. Bus Company, a corporation, was the owner of a permit authorizing it to engage in the same business between Prestonsburg and Martin, Ky., and also the owner of the other one-half interest in permit No. 5025 under which it did business as the Paintsville Bus Company operating between Paintsville and Prestonsburg, Ky.

Early in the year 1931, Sparks Bros. Bus Company filed an application with the commissioner of motor transportation for the extension of its permit from Prestonsburg via Allen to Pikeville, Ky., covering a route already served by the Cannonball Transit Company under its permits. The Cannonball Transit Company and the Chesapeake & Ohio Railroad Company filed protests with the commissioner against granting an extension of the permit of the Sparks Bros. Bus Company from Prestonsburg via Allen to Pikeville. At the time of filing its protest, and for a long time prior thereto, the Cannonball Transit Company operated a bus line for hire from Prestonsburg via Allen to Pikeville. The Sparks Bros. Bus Company at the same time was operating over the same route a bus line for hire from Prestonsburg to Allen.

The basis of the application of Sparks Bros Bus Company was that the Cannonball Transit Company was not furnishing adequate, or reasonably sufficient services and that a second bus line from Allen to Pikeville was required as a public necessity and convenience. On the issue joined, a great many witnesses were heard, pro and con. Without detailing the evidence, that in behalf of the Cannonball Transit Company shows its equipment was adequate for the necessity and convenience of the public and it was furnishing all the bus services needed or required over the route covered by its permit; that in behalf of Sparks Bros. Bus Company was convincing that the equipment and services of the Cannonball Transit Company were wholly inadequate and unsatisfactory to answer the necessities of the traveling public and that a second bus line over the route from Allen to Pikeville and return was demanded by the needs of the traveling public. The evidence was sufficient to sustain a finding in favor of, or against, the contentions of either of them.

Two permits had been issued and the two lines were operating from Prestonsburg via Allen to Pikeville and one from Allen to and return from Pikeville, and Sparks Bros. Bus Company's application was for an extension of its permit only from Allen to Pikeville and return.

It is true there was evidence that the Cannonball Transit Company had not made its schedule with regularity and its schedule had been reduced from eight to five trips a day, and there was proof that it was necessary to make a greater number of trips from Pikeville to Allen, and return, to carry passengers desiring to travel. Also there was proof that passengers desiring to ride on the busses were unable to find seats and the passengers were overcrowded and required to ride standing. This proof amounts to no more than the opinions of some of the witnesses that more frequent busses would enable persons along the route to go to and return from points along it with more convenience. As was said in Shorty's Bus Line et al. v. Gibbs Bus Line, Inc., et al., 237 Ky. 494, 35 S. W. (2d) 868, 869:

> "To show a necessity for additional trips, it is necsary to show that the scheduled trips do not take care of the travel. To show that a traveler could get to a place and return from it more conveniently does not show a necessity. * * * Ordinarily, where there is a necessity for additional trips, it would mean that the holder of the certificate over the route, if able to do so, would establish additional schedules, as it would mean a greater income."

The Cannonball Transit Company had not been required by the commissioner of motor transportation to conform to a schedule calling for additional trips or to provide itself with additional equipment, nor was it shown that it was unwilling to conform with the requirements of the commissioner in this respect, and, while that may not have been sufficient, if other necessary facts appeared, to have required the granting the the extensions to the Sparks Bros. Bus Company, it is persuasive that, if there was a real necessity for additional trips, they could be taken care of by the Connonball Transit Company by increasing its number of trips and its equipment. The commissioner, before granting a second or subsequent permit over a route over which a bus line with a schedule of trips is operated,

is not only required to find from the facts that the granting of a second or subsequent permit would be a convenience, but also that it is a necessity. ''The necessity for additional trips'' does not warrant of itself the granting of a second or subsequent permit over the same route unless the operating company, by conforming to the schedule of trips, as fixed by the commissioner, or, if need be, increased by him, the operating company cannot take care of the travel, according to the increased schedule as fixed by the commissioner.

The testimony shows the Cannonball Transit Company and the Sparks Bros. Bus Company were already making seventeen round trips between Prestonburg and Allen and the Cannonball Transit Company was making five round trips between Allen and Pikeville, and it manifested a willingness to increase its schedule to enlarge its equipment, if necessary, to meet the necessities of the traveling public, at the same time insisting its equipment and schedule of trips were adequate to meet the necessities of the traveling public as required by the commissioner. In addition to the bus accommodations from Pikeville, the traveling public was afforded railroad facilities for travel and transportation, which is a factor to be considered.

As was said in Consolidated Coach Corp. v. Ky. River Coach Co., 249 Ky. 65, 60 S. W. (2d) 127, 132:

''Sections 2739j-3 and 2739j-4 [Kentucky Statutes] provide that no such certificate shall be issued by the commissioner until it shall be established that the service proposed to be rendered by the applicant is not being adequately performed at the time of such application by any other person, firm, or corporation, and, further, that it shall be his duty to refuse any application for a permit over a route where there has already been two or more lines established, unless shown to the commissioner's satisfaction that the existing operations are not sufficient to take care of the traveling public and the persons holding said certificates refusing to put on sufficient service to take care of the traveling public.''

In Cardinal Bus Lines v. Consolidated Coach Corp. et al., 254 Ky. 586, — S. W. (2d) — , decided May 29, 1934, it was said:

"In every case, before granting a second or a subsequent permit, it is the duty of the commissioner to determine from the facts that an additional bus line over the route is reasonably required for the convenience and also the necessity of the traveling public, and unless the facts presented by the applicant for a second or subsequent permit over the same route, demonstrate with certitude that the granting of the same is reasonably required for the convenience and also the necessity of the traveling public, the commissioner is without authority under the statutes to grant it."

Under section 2739j-3, in view of the existing service of the Cannonball Transit Company from Pikeville to Allen, that portion of the route over which the Sparks Bros. Bus Company sought to have its permit extended, the Cannonball Transit Company should be allowed, if deemed necessary by the commissioner of motor transportation, to establish a schedule, instead of the existing one, and to supply itself with additional equipment, if need be, to fulfill the necessities, and to meet the convenience of the traveling public, and its right in this respect under section 2739j-3, precludes that of Sparks Bros. Bus Company to have its permit extended and of the commissioner of motor transportation to grant the extension of the latter's permit unless and until the Cannonball Transit Company fails or refuses to comply with the order of the commissioner requiring the establishing of such schedule as he deems necessary on the proven facts, necessary and proper. Barnes v. Consolidated Coach Corp., 223 Ky. 465, 3 S. W. (2d) 1087; Red Star Transp. Co. v. Red Dot Coach Lines, 220 Ky. 424, 295 S. W. 419; Cooper v. McWilliams & Robinson, 221 Ky. 320, 298 S. W. 961. These cases well state the law applicable and controlling in the present case.

The commissioner assumed the power to determine, and did determine, it was his duty to reorganize completely the bus services under the various permits of both bus companies between Paintville and Pikeville. To accomplish this he attempted to cancel the permits respectively held by the applicant and the protestant and "ordered to be re-issued and renewed into one permit and extended from Prestonsburg to Pikeville

thereby granting all rights and privileges to Sparks Brothers Bus Company to operate one-half of the permit's right and the services between Paintville and Pikeville via Prestonsburg and Allen''; also ''ordered to be re-issued and renewed into one permit, granting to the said Cannonball Transit Company all rights and privileges in one-half of the permits to operate motor busses between Pikeville and Paintsville via Allen and Prestonsburg,'' and ''when renewed and re-issued to Sparks Brothers Bus Company and Cannonball Transit Company shall be operated on schedules as may be hereafter provided and approved by the Commissioner and said schedules are subject to change at any time at the discretion of the Commissioner.''

In short, the commissioner canceled the permits respectively owned by Sparks Bros. Bus Company and those owned by the Cannonball Transit Company and issued permits which neither of them sought, when the questions before him were the right of the Sparks Bros. Bus Company to have its permit extended from Allen to Pikeville and the right of the Cannonball Transit Company to protest its extension. A mere statement of the actions of the commissioner itself demonstrates that he exercised a power authorized by neither the evidence nor the law. The parties were not before him on notice or application to cancel their permits, and it scarcely needs to be stated that he acted not on the evidence of the parties nor upon their applications, but sua sponte, which was not authorized by any section of the Statutes. The Statutes state the procedure that the commissioner shall take when canceling permits, which must be followed by him in the manner and form therein prescribed. The permits of the parties were valuable property, and they ought not be deprived thereof except in pursuance of, and according to, the Statutes conferring the power on the commission to cancel the same. The circuit court approved the actions of the commissioner, in which we cannot concur. The commissioner should have heard and determined the Sparks Bros. Bus Company's application on the facts adduced and at the same time considered the protest and the rights of the Cannonball Transit Company under the Statutes as they have been construed by this court.

For the reasons indicated, the judgment is reversed, with directions to remand the proceeding to the commissioner of motor transportation for his compliance herewith consistently with this opinion.