## Whittaker et al. v. Southeastern Greyhound Lines.

April 28, 1950.

Rehearing denied December 8, 1950.

W. B. Ardery, Judge.

Stanley B. Mayer for appellants.

R. W. Keenon and Joseph J. Leary for appellee.

JUDGE LATIMER—Affirming in part, reversing in part.

This controversy arose from the granting of a certificate of convenience and necessity by the Division of Motor Transportation to Blue Motor Coach Lines for the operation of a bus line between Louisville and Middletown over U. S. Highway 60, a distance of some seven miles. The granting of the certificate was protested by Southeastern Greyhound Lines, The Louisville Railway Company, and Kentucky Bus Lines, (hereafter designated respectively, "Southeastern," "Railway," and "Kentucky Lines").

At the hearing almost a hundred witnesses testified before the Director. His conclusion, based in part on his own personal knowledge of the territory to be served as well as the testimony of witnesses, was that in the interest of public convenience and necessity the certificate applied for should be granted.

From this decision Southeastern appealed to the Franklin Circuit Court. There the Chancellor adjudged

the certificate to be void, because Southeastern had not been notified by the Division that its service was inadequate and had not been given an opportunity to improve its service. Apparently the Chancellor's decision was based squarely on our decision in Utter et al. v. Black, 305 Ky. 136, 202 S.W.2d 425.

Blue Motor Coach Lines (hereafter designated "applicant") on this appeal contends the principle of law stated in Utter v. Black is incorrect, because the rule in that case found its support in decisions based on a statute which has long since been repealed. We think it unnecessary to pass upon the soundness or unsoundness of that specific decision as the judgment of the Chancellor with respect to applicant's certificate must be sustained on another ground.

There is no doubt the Division of Motor Transportation has broad discretion in determining the need for and type of common carrier certificate it issues, and the power of the Court to review its action is limited in KRS 281.420. However, the Court may determine whether or not there is substantial evidence to support the finding of facts in issue, and whether or not the Director acted within the scope of his statutory powers.

It is necessary for us to review briefly the evidence presented by the record. Over the past several years there has been an extensive suburban development extending eastwardly from the city limits of Louisville along U. S. Highway 60 toward Middletown. The operation sought by applicant, and authorized by the certificate issued, is much more than an inter-city service between Middletown and Louisville. It involves the picking up and discharging of passengers at all points between the city limits of Louisville and Middletown, including all of the St. Matthews area along this route.

It appears that Railway has extended its city bus service eastward, and has a heavy schedule of busses operating to and from Hubbard's Lane. Kentucky Lines has several daily trips which extend beyond this point to an intersection where their busses turn off to Anchorage and LaGrange. In addition, Kentucky Lines operates two daily round-trip schedules directly between Louisville and Middletown. Southeastern has been operating 27 daily trips between Louisville and

Middletown, although a number of their busses carry passengers to other cities east of Middletown.

The evidence introduced by the applicant was to the effect that the busses of Southeastern often passed up passengers along the route or left them standing at the stations because of crowded conditions of the busses. Witnesses testified that they were often unable to obtain seats, and that the Company was giving preference to inter-city passengers over urban passengers. There was also testimony that the schedules of this Company were not convenient for the witnesses' particular purposes. There was evidence along the same line with respect to the crowded conditions of both Kentucky Lines and Railway vehicles.

Though there is extensive proof the bus lines now operating along this route are reasonably taking care of the present needs of travelers, we will accept for the purposes of this decision the Director's finding that the service being rendered is inadequate. This alone is not sufficient to establish applicant's right to a certificate. The Director must also find a *necessity for this new service.*

The significant factors the Division shall take into consideration in granting or refusing a certificate are set out in KRS 281.070 as follows: (our italics) "In granting or refusing to grant a certificate, the division shall take into consideration the effect that the proposed operation may have upon public transportation business and *facilities of every character within the territory* sought to be served by the applicant, whether existing transportation service is adequate, *the public need for the service the applicant proposes to render,* the ability of the applicant efficiently to perform the service, and the probable effect upon the highways and upon the safety of the public using the highways."

In connection with this statute, we call attention to KRS 281.090 which provides for the issuance of a certificate if the applicant has established "that the privilege sought by the applicant is convenient and necessary in the public interest."

Considering the language used in the statutes above quoted, it is apparent that while the convenience of the traveling public is a major consideration, another of

vital importance is whether or not there is a real *necessity* for the new service which the applicant proposes to render. It was long ago held that it was not proper to grant a common carrier certificate simply because of the public convenience, but both convenience *and* public necessity must be established. See Cooper et al. v. McWilliams & Robinson et al., 221 Ky. 320, 298 S.W. 961, and Cannonball Transit Company v. Sparks Bros. Bus Company et al., 255 Ky. 121, 72 S.W.2d 1021.

The statute requires the Division to take into consideration the existing facilities in the territory. Facilities are distinct from service. They may be said to be the available means of furnishing the service. If the existing carriers on the route have sufficient physical equipment and personnel, are willing to add additional service if necessary, and may be ordered to do so by the Division, it is difficult to discover wherein a completely new service is necessary. See Red Star Transportation Co. v. Red Dot Coach Lines et al., 220 Ky. 424, 295 S.W. 419; Shorty's Bus Line et al. v. Gibbs Bus Line Incorporated et al., 237 Ky. 494, 35 S.W.2d 868; Consolidated Coach Corporation v. Kentucky River Coach Company et al., 249 Ky. 65, 60 S.W.2d 127.

The record before us shows the following facts: Southeastern, in its protest filed in this proceeding, stated that no additional service was necessary between Middletown and Louisville, but if so, it was "ready, and willing, and able to furnish such service." Its Vice-President in Charge of Traffic testified that the Director had never notified him or his Company of any need for additional service on this route, and he stated that his Company was ready, willing and able to put on additional service if needed, and would re-adjust its schedules to meet such requirements as the Director deemed necessary. This offer was reiterated by Southeastern's territorial traffic representative.

It further appears that Kentucky Lines had filed with the Division of Motor Transportation, prior to the hearing, proposed new schedules which would increase its service over this route. Its President testified that his Company was ready, willing and able to furnish the same services proposed by applicant, or whatever service might reasonably be required by the Division.

The protest of Railway recites that it had on file with the Division a pending application which would authorize it to extend its operations to Middletown. An officer testified that Railway would be willing to alter its service, over the route it was authorized to cover under its existing certificate, to conform to whatever directions the Director might give.

Another matter of significance in this connection is that the certificate of Kentucky Lines requires it to operate with closed doors over the part of the route served by Railway, this indicating that the Division had, until the time of the granting of the certificate here involved, considered that there was no necessity for additional service in this particular area.

We thus find the Director was confronted with the following situation: Three established and responsible bus companies were operating over the route, or an important part thereof, when the application of a fourth company was filed. Each of the three companies then furnishing service had by application, the filing of new schedules, or by offers made at the hearing, expressed a desire and willingness to render such service as the Division deemed adequate.

KRS 281.180 specifically authorizes the Division to require existing operators to render adequate service along their certificated routes if it is found that the service being rendered is adequate. In view of this statute, and in view of the offers of the existing carriers on the route, we cannot find any evidence of substance that there existed a public necessity for the granting of a certificate to a new carrier.

It is true the type of service applicant proposes to render may have become necessary to take care of the suburban needs in this rapidly developing area. However, disregarding the increased hazards that may result from the operations on this heavily traveled highway by a fourth bus line, it has not been shown satisfactorily by this record that present operators, singly or jointly, are not able to furnish such service as is required. Until this can be established, other than by the testimony of a few persons that they have suffered inconvenience or discomfort, we do not believe a public need for applicant's particular service has been shown. Such being the case, the finding of the

Director with regard to necessity was not supported by substantial evidence, and the Director acted arbitrarily in authorizing the issuance of the new certificate.

Without prejudice to applicant's rights, we think the entire matter should be remanded to the Division for the purpose of having it reconsider the reasonable needs for additional service on this route; to consider any pending applications, proposed new schedules, or offers to furnish additional service by Southeastern, Kentucky Lines, and Railway; and to direct these existing certificated carriers on the route to furnish such additional service, if any, as may be found to be reasonable. The application of applicant should be continued, and in the event the above mentioned carriers fail to take care of the reasonable needs of the traveling public within a reasonable time, such application may again be entertained.

The judgment is affirmed to the extent it adjudges invalid the certificate issued by the Division of Motor Transportation to appellants; and is reversed insofar as it dismisses such application, with directions to remand the case for further proceedings consistent with this opinion.