## Black Bus Line v. Consolidated Coach Corporation.

(Decided June 24, 1932.)

C. R. LUKER, for appellant.

R. W. KEENON, for appellee.

Opinion of the Court by Judge Thomas—Affirming.

This proceeding, instituted before the commissioner of motor transportation by O. H. Black, doing business under the name of Black Bus Line, against appellee, Consolidated Coach Corporation, is the last one of prior similar proceedings in a litigious effort on his part to prevent alleged invasions of his rights by appellee as an operator of a bus line between London and Corbin, Ky. The result of the last preceding similar effort may be obtained by consulting the case of Black Bus Line v. Consolidated Coach Corporation, 235 Ky. 559, 31 S. W. (2d) 917, 918, which opinion was delivered September 26, 1930, and, of course, involved only facts arising up to the time of the hearing of that proceeding before the commissioner of motor transportation. The authority to so inaugurate such investigations is conferred by section 2739j-13 of the 1930 Edition of Carroll's Kentucky Statutes, and immediately following sections prescribe for, and the practice concerning, appeals to the Franklin circuit court and from thence to this court. A reading of the opinion, supra, will show the nature of the litigation and the facts upon which it is based. It is, that the applicant and appellant, Black, obtained from the commissioner of motor transportation the right to operate a passenger bus between the cities of London and Corbin, Ky., and on the reverse trips from Corbin to London. Later the appellee, Consolidated Coach Corporation, obtained a right from the same source to operate a passenger line of busses from Lexington, Ky., through various points to Middlesboro, Ky., and which ran from thence to Knoxville, Tenn., a part of which Kentucky route was over the same road connecting London and Corbin, Ky.

In our opinion, supra, an interpretation of the statute and of the rulings of the commissioner in conformity therewith was made, the substance of which was, that inasmuch as the appellant, Black, owned the prior right to transport passengers whose trips originated at either of the towns mentioned and terminated at the other one, the coach corporation (hereinafter referred to as the C. C. C.) would not be permitted to transport a passenger whose trip originated at one of those points to the end thereof at the other one, nor from one of those points to the termination of the passenger trip at a place located between them. But it was also held in that

opinion that the C. C. C. had the right to carry passengers to one of the towns mentioned if their trip originated on its line beyond the other one of those cities. Illustrating that statement, our former opinion held that the C. C. C. could transport a passenger whose trip began at a point on its line south of Corbin and whose destination was London; and, vice versa, it could transport a passenger from a point north of London on its line to Corbin. Likewise, it could accept a passenger whose trip originated at either of those cities for points beyond the other one, according to the direction that the trip was being made. That opinion therefore denied the contention of the applicant, Black, that all passengers on the busses of the C. C. C. when they arrived at either of those cities must change from such bus to one operated by Black, if the destination was at the other terminus of Black's route or any intervening point.

The instant application or litigation was commenced before we handed down the opinion, supra, between the same parties, involving largely similar facts, and in which complaint the commissioner was asked that the certificate of the C. C. C. be amended so as to make London, Ky., its south terminal from Lexington, and Corbin, Ky., its north terminal from Knoxville, Tenn., "thereby revoking that part of the certificate of the defendant which gave it the right to operate busses upon U. S. Route No. 25 between London and Corbin, Kentucky." In other words, the applicant contends that the regulatory power of the commissioner should be exercised in such a way as to eliminate the busses of the C. C. C. from that part of its route to Knoxville, covering the space between London and Corbin, and which, if done, would be for the exclusive benefit of appellant, Black, as an operator of passenger busses over that particular space of the entire route of the C. C. C., and that, too, without regard to the accommodation and interest of the traveling public. That contention disregards our construction of the object and purpose of our motor transportation statutes, as well as the powers and duties of those intrusted with its administration, chief of whom is the motor transportation commissioner. It was therein held that the statute, as well as the rules and regulations of the commissioner, "are to be construed in the interest of the traveling public, not the operator." Compare, also, the cases of Red Star Transportation Company v. Red Dot Coach Lines, 220 Ky. 424,

295 S. W. 419, and Barnes v. Consolidated Coach Corporation, 223 Ky. 465, 3 S. W. (2d) 1087.

Likewise, those opinions also hold that the commissioner upon such hearings is invested with a sound discretion, but which should not be exercised arbitrarily, collusively, or fraudulently to the detriment of acquired rights of competing bus operators over the same route or between the same termini, and it was in protection of such rights that we held in our last opinion, supra, between these same litigents, that the C. C. C. should not be allowed to transport passengers whose trips originated at or between one of the cities mentioned and terminated at the other one, or at some intervening point; but that, since the statute should be construed in the interest of the traveling public, it was also held therein that the requirement just stated would not be violated by the carrying of passengers whose trips originated beyond one of those cities and terminated at the other one, or where it originated in or at one of them and terminated at a point beyond the other one. Of course, it was therein recognized that the latter class of conveyances, or tickets to make them, should be bona fide made or sold, and that the collection of fare or the sale of tickets to a nearby point beyond either of those cities, with no intention on the part of the passenger to continue his trip to such nearby point, but to terminate it at the terminus of Black's superior route, and all of which was with the knowledge and consent of the C. C. C., would be the employment of a subterfuge and would be a manifest fraud on appellant's rights, and should not be tolerated.

In the instant complaint, it is averred that conduct of the character last described has been constantly practiced by the C. C. C., its coach drivers, and its ticket agents, with the knowledge that the accepted passengers had no intention of going to the destination of his agreed upon trip to the nearby point above referred to, and that in some instances passengers had been carried from one of the cities supra, to the other one openly and without even an effort to practice such subterfuge, and which, if true, was in plain violation of the rights of the applicant, Black.

It was also charged in the complaint that on one occasion four passengers were picked up by one of the bus drivers of the C. C. C. between Corbin and London,

and carried to Corbin, and that on another occasion a passenger boarded one of the busses of the C. C. C. between Corbin and London, and, after arriving at the latter place, bought a ticket to Cincinnati, Ohio, over the line of the same carrier, and made the trip on one of its busses, and it is claimed that such action was in violation of the rights of Black. The responsive pleading denied all such charges, and the evidence before the commissioner was heard partly by affidavits, and partly by testimony introduced before him, which latter was transcribed and certified to the circuit court and the same affidavits filed before him were read in that court. The commissioner dismissed the application, and at the hearing in the Franklin circuit court on the same evidence his ruling was affirmed, and from that judgment this appeal is prosecuted.

It conclusively appears that after, and perhaps before, Black made his former application before the commissioner (and which is the one reported in 235 Kentucky case, supra), the C. C. C. notified all of its bus drivers and agents of its interpretation of the rights of Black, as well as those of itself under their respective certificates, with reference to the transportation of passengers between London and Corbin, and vice versa. After the 235 Kentucky opinion, supra, was rendered, it repeated such notifications and during that time, or prior thereto, there was a conference between Black and the proper authorized officer of the C. C. C., in which he was told, not only of such notifications, but also of the intention and purpose on the part of the C. C. C. to strictly observe and protect his rights along and over the territory to which he possessed the superior right of transportation, and at the same time he was instructed that if he found any of its drivers or agents violating such rights to notify the C. C. C. when the matter would be rectified by paying to him any and all transportations collected by reason of such violations. He never notified it of any such violations, but appellee in some manner did obtain knowledge of two of the charged complaints, testified to by Black. They were the picking up of the four passengers between London and Corbin and transporting them to the latter place, and another one of less magnitude. The fare collected by the C. C. C. for so transporting the four passengers was $2 in the aggregate. It sent to Black its check for that amount, but which he declined to receive, and returned it. Appellee

also remitted to him the amount received by it growing out of the other violation which, it appears, are the only ones about which the managing officers of the C. C. C. obtained information. The transportation of the four passengers referred to arose under these circumstances: They were traveling to Corbin and had a wreck in which some of them were slightly injured. The bus of the C. C. C. came along and found them in that condition. They importuned the driver of its bus to carry them to Corbin under the circumstances, and he yielded to their importunities, and did so. It is needless to say that the transportation of those passengers under the circumstances was not such a violation of the rights of Black as to require a visitation of any penalty on appellant.

The proof in the case also tends to show that on a few occasions between the hearing of the two applications a passenger was carried by the C. C. C. from London to Corbin, and, perhaps, a similar number were carried from Corbin to London, when it was known that his trip was exclusively between those two points. But those trips were made after Black ceased to operate his bus for the day pursuant to his schedule, and such passengers would be compelled to wait until the next day if they traveled on his bus. It is doubtful if transportations made under such circumstances could be considered as violating the statute, or its interpretation by the commissioner of motor transportation, or our opinion in the 235 Kentucky case, supra. But, however that may be, the failure of the commissioner to revoke, suspend, or otherwise modify the certificate of the C. C. C. for such occasional derelictions will not be disturbed as being arbitrary, fraudulent, or collusive, when it is remembered that the accommodation of the public is the chief purpose of the statute, and of all of its regulatory provisions.

It is also insisted on this appeal that the C. C. C. has no right to transport a passenger on one of its local busses coming into one of the termini to Black's line and who alights from that local bus and later boards a through one of the C. C. C. to the other terminus. But that argument was impliedly, if not expressly, determined otherwise in the 235 Kentucky case, supra, between the same parties. If, however, it had not done so, we unhesitatingly conclude that a passenger so traveling is one that may be carried by the C. C. C. on a local bus from the starting point to one of the termini and from

thence to the other one on a through bus of the C. C. C., since there is no practical difference between a continuous trip on a through bus, originating and terminating in the same way, and one made partly on a local bus and partly on a through one.

In conclusion, and in expressing ourselves upon the whole case, it may be said that the record furnishes no foundation for the conclusion that there exists a deliberate purpose on the part of the C. C. C. to violate any of the rights of Black as an exclusive transporter of passengers between London and Corbin, and vice versa. Under the circumstances of joint users of the highway between those points, some departures from strict adherence to the superior rights of Black will necessarily be made. But, as clearly appears from the record, they occur without the knowledge, consent, or direction of the C. C. C., and for which it has agreed to compensate Black upon notification from him. It is thus made to appear that it has conducted its business over the route of their joint occupancy in the bona fide effort to recognize and protect his rights and to remunerate him in all cases where any of its agents or servants have violated them, either intentionally or mistakenly. We therefore conclude that it is time to terminate this character of litigation between these parties until something of a different and more substantial nature arises. We also conclude that the commissioner did not abuse a sound discretion in dismissing the application, and that the Franklin circuit court properly affirmed that ruling.

Wherefore, the judgment is affirmed.