## Union Transfer & Storage Co. v. Huber & Huber et al.

(Decided Oct. 23, 1936.)

R. W. KEENON and SAMUEL ROSENSTEIN for appellant.

STANLEY B. MAYER and RICHARD PRIEST DIETZMAN and BAILEY P. WOOTTON for appellees.

Opinion of the Court by Drury, Commissioner— Reversing.

The Union Transfer & Storage Company, a common carrier, holding a certificate of convenience and necessity, and operating thereunder between Lexington, Ky., and Louisville, Ky., over United States highway 60, sought to have the court enjoin Huber & Huber from operating under certificate No. 103 and to have the court cancel that certificate. Its petition was dismissed, and it has appealed.

On November 1, 1932, there was issued to Peach Transfer Line, a trade-name for Ida Peach, a certificate of public convenience and necessity, the number of which was 103, and which we shall hereafter refer to simply as "certificate 103."

On the back of this certificate this appears:

"This certificate grants permission to operate a Motor Freight Line between Louisville, Kentucky and Lexington, Kentucky, via: Harrodsburg, Danville, and Lawrenceburg, Kentucky; over Highways No. 60, No. 35, No. 27 and No. 62; with the privilege of servicing Lawrenceburg, Lexington, Har-

rodsburg and Danville, Versailles, **Tyrone, Alton,** Salvisa, McAfee, Burgin, Shakertown."

That certificate means that the common carrier operating under it may use United States highway 60 from Louisville to its junction with state highway 35 near Graefenburg, thence over the latter to Danville, Ky., from which place such common carrier may use state highway 34 to its junction with United States highway 27 at Camp Dick Robinson, thence such common carrier must use United States highway 27 to Lexington. Since section 2739j-45, Ky. Stats., forbids a common carrier to operate a motor vehicle for hire without a certificate, it follows that the permission to operate over this route carries the obligation to operate over this route and not elsewhere or otherwise. When a truck operating under certificate 103 leaves Louisville for Lexington, it must follow this route just as faithfully as though it were operating on a steel track laid along it. When it gets ready to leave Lexington, it must turn around and back track the route by which it came to Lexington. It cannot cruise about at will or depart from this route at all except, in order to reach and service Tyrone and Versailles, it may use United States highway 62 from Lawrenceburg to Versailles, and there turn around and back track to Lawrenceburg.

To reach Burgin and Shakertown it must use state highway 152 from Harrodsburg to Burgin, or state highway 33 from Danville to Burgin, thence continuing on state highway 33 to Shakertown, and thence return by reversing the route by which it came.

### The Stay Order.

Section 2739j-55, Ky. Stats., provides that if it becomes necessary on account of the condition of the roads or other emergency, temporary changes in route, service, and schedules may be made, and we suppose that has been done occasionally, about which there is no complaint, but Huber & Huber made application for a stay of operations on certificate 103 for ninety days on that part of the route covered by it lying between Lawrenceburg and Danville and Danville and Lexington, and made this further request:

"Privilege is asked to operate the Certificate No. 103 from Louisville, Kentucky, to Graefenburg, Kentucky, over Highway 60, from Graefenburg to

Lawrenceburg over Highway 35, from Lawrenceburg to Versailles over Highway 62, and from Versailles to Lexington over Highway 60. Privilege also asked to operate the same route on the return trip."

Upon that request, we find this indorsement. "Approved Dept. of Motor Transportation, Mar. 7, 1935, by Cliff Claypool [Signed] Commissioner." The reason assigned for this request was given in person, so Mr. Claypool testifies, and was "that the business did not justify it." That is an insufficient reason. Whenever the business does not justify operations, the thing for the holder of the certificate to do is to surrender it, as is provided in section 2739j-55 Ky. Stats. Whether the holders of these certificates make money or not is a matter of no concern to the commissioner. He should be guided alone by the convenience and necessity of the public, whose servant he is.

The request which the commissioner approved amounted to a change of route, and the commissioner had no authority to approve it. Section 2739j-55, Ky. Stats. makes provision for a change of route, but to accomplish such a change, the holder of the certificate must adopt the same procedure provided by sections 2739j-46 to 2739j-51 inclusive, Ky. Stats.

After this so-called stay order was made, Huber & Huber treated it as though it were unending, and they have abandoned that part of their route to which it was supposed to apply. This order was and still is a mere nullity. The powers of the commissioner must be found in the statutes. If they are not there, they are nonexistent. Ours is a government of law, not of men.

### Irregularities.

This record discloses a perfect riot of irregularity in the renewals of this certificate, and seems to indicate the commissioner would renew it in the name of any one who would come in and ask for it. This certificate was issued originally to Ida Peach.

"Certificate [103] in 1933 issued to Peach Transfer Line, Owners Mell Peach and G. L. Redmon.

"Certificate [103] in 1934 was issued to Redmon Motor Express.

"Certificate [103] in 1935 was issued to Mell·Peach and G. L. Redmon on Jany. 16, 1935."

Mr. Claypool testifies there is no written statement or contract by Ida Peach authorizing these transfers.

The Union Transfer & Storage Company asks that this certificate be canceled by this court because of these irregularities, and insists that section 2739j-92, Ky. Stats. gives to it as a common carrier having an interest in this subject-matter the right to ask that this be done. We do not find it has any such interest in the manner in which this certificate has been renewed as will justify the court in the cancellation of the certificate. The Union Transfer & Storage Company is vitally interested in the cancellation of this certificate we admit, for that will rid it of a competitor, but it is not interested in how it is renewed, whether regularly or irregularly.

Hence the trial court did not err in refusing to cancel this certificate, but the trial court did err in refusing to enjoin Huber & Huber from operating between Louisville and Lexington over United States highway 60 via Versailles, Lawrenceburg, etc., to Louisville. The trial court will set aside its judgment and enter one requiring Huber & Huber to operate via Danville, and will enter an order permitting Huber & Huber to operate as we indicated in the first part of this opinion, and enjoining them from operating under this certificate over any other routes or in any other manner, and permitting them to service Versailles, Tyrone, Burgin, and Shakertown over the routes, and to travel in the manner we have indicated, and enjoining them from using any other routes or traveling in any other manner in so doing.

Judgment reversed.